UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 20-1584 JGB (KKx)** | Date | March 26, 2021 |
|---|---|---|---|
| Title | *Brian Whitaker v. J. Reflection, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiff's Application for Default Judgment (Dkt. No. 12); and (2) VACATING the hearing set for March 29, 2021 (IN CHAMBERS)

Before the Court is Plaintiff's Application for default judgment. ("Application," Dkt. No. 12.) The Court finds the Application appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of the Application, the Court GRANTS the Application. The March 29, 2021 hearing is VACATED.

## I.   BACKGROUND

This action arises out of alleged ADA violations at Defendant's business located at 7802 Kew Avenue, Rancho Cucamonga, California ("Store"). Plaintiff Brian Whitaker filed a Complaint against Defendants J. Reflection and Does 1–10 on August 10, 2020. ("Complaint," Dkt. No. 1.) The Complaint alleges two causes of action: (1) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.; and (2) violation of the Unruh Civil Rights Act ("UCRA"), Cal. Civ. Code §§ 51-53. (See Compl.)

Defendant J. Reflection ("Defendant") was properly served with the Complaint and summons by substituted service at the business address on August 31, 2020. (Dkt. No. 9.) Despite being served with the summons and Complaint, Defendant failed to file a response within the time prescribed by the Federal Rules of Civil Procedure.

After Defendant failed to file a responsive pleading, Plaintiff filed a request for entry of default on September 24, 2020. (Dkt. No. 10.) The Clerk of this Court entered default against

Defendant on September 25, 2020.  ("Entry of Default," Dkt. No. 11.)  On April 10, 2020, Plaintiff moved for default judgement, requesting $4,000 in damages, plus attorneys' fees and costs.  (Appl.)  In support of the Application, Plaintiff filed six declarations:

- Declaration of Russell Handy, along with billing records ("Handy Declaration," Dkt. No. 12-3);
- Declaration of Brian Whitaker ("Whitaker Declaration," Dkt. No. 12-4);
- Declaration of Randall Marquis ("Marquis Declaration," Dkt. No. 12-5);
- Declaration of John. D. O'Connor ("O'Connor Declaration," Dkt. No. 12-10);
- Declaration of Faythe Gutierrez ("Gutierrez Declaration," Dkt. No. 12-11).

Plaintiff also filed as exhibits pictures of the Store (Ex. 4, Dkt. No. 12-6); public records identifying the owner (Ex. 5, Dkt. No. 12-7); and a real estate report (Ex. 7, Dkt. No. 9).  Defendant did not file an opposition.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b), a court may order default judgment following the entry of default by the Clerk of the Court.  Local Rule 55-1 requires an application to the Court for default judgment be accompanied by a declaration that conforms to the requirements of Federal Rule of Civil Procedure 55(b) and set forth the following information:

(1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Servicemembers Relief Act does not apply; and (5) that notice of the application has been served on the defaulting party, if required.

L.R. 55–1.

Whether to enter default judgment is within the sound discretion of the district court.  Aldabe v. Aldabe, 616 F.2d 1089, 1092–93 (9th Cir. 1980).  In Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit set forth the following factors for consideration in determining whether to grant default judgment:

(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471–72 ("Eitel factors").  Upon entry of default, the well-pleaded factual allegations of a complaint are deemed true; however, allegations pertaining to the amount of damages must be proven.  TeleVideo Systems Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir.

1987).  A plaintiff is required to provide evidence of his damages, and a court may rely only on the declarations submitted by the plaintiff or order a full evidentiary hearing.  Fed. R. Civ. P. 55(b)(2).  Further, the damages sought must not "differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

### III.   DISCUSSION

Plaintiff moves this Court to enter default judgment against Defendant.  Plaintiff seeks to recover $4,000 in damages, and $3,163.60 as attorneys' fees and costs.  (Appl. at 7.)  Plaintiff must meet the procedural requirements described above and establish that, on balance, the Eitel factors weigh in his favor.  The Court evaluates these factors below.

#### A.  Procedural Requirements

Plaintiff has satisfied the procedural requirements for entry of default judgment by the Court.  Pursuant to Federal Rule of Civil Procedure 55, Plaintiff did not petition for entry of default judgment until after default was entered against Defendant by the Clerk.  (Entry of Default.)  Additionally, Plaintiff's Application and accompanying Gutierrez Declaration set forth the information required by the Local Rules of this Court.  (Gutierrez Decl. ¶¶ 2-6.)  Plaintiff's counsel also represents that notice of this Application was served by mail to Defendant.  (Id. ¶ 6.)

#### B.  Eitel Factors

##### 1.  Possibility of Prejudice to Plaintiff

Plaintiff would suffer prejudice if the Court does not enter default judgement.  Because Defendant has not appeared in this action, a default judgment is the only means by which Plaintiff may recover.  Absent a default judgment by this Court, Defendant will have avoided liability simply by not responding to Plaintiff's action.  Therefore, this factor weighs in favor of default judgment.  Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (finding the plaintiff would suffer prejudice absent entry of a default judgment because of the defendant's unwillingness to cooperate and defend against the claim).

##### 2.  Substantive Merits of Plaintiff's Claims

The second and third Eitel factors concern the merits of Plaintiff's substantive claims, and the sufficiency of the complaint.  Eitel, 782 F.2d at 1471–72.  "The Ninth Circuit has suggested that these two factors require that a plaintiff 'state a claim on which the [plaintiff] may recover.'"  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172 (C.D. Cal. 2002) (internal citation omitted).

//
//
//

### a. Title III of the ADA

Title III of the ADA prohibits discrimination by public accommodations. It provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007) (internal alteration original). In addition, "[t]o succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business [or property] presents an architectural barrier prohibited under the ADA and (2) the removal of the barrier is readily achievable." Parr v. L & L Drive–Inn Restaurant, 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000); see also Johnson v. Beahm, 2011 WL 5508893, *2 (E.D. Cal. Nov. 8, 2011).

### i. Standing

As with all causes of action, a plaintiff must have Article III standing to bring a claim under the ADA. To establish Article III standing, a plaintiff must demonstrate that he or she has suffered an injury in fact, that the injury is traceable to the defendant's challenged conduct, and that the injury can be redressed by a favorable decision. Hubbard v. Rite Aid Corp., 433 F. Supp. 2d 1150, 1162 (S.D. Cal. 2006). "Under the ADA, when a disabled person encounters an accessibility barrier violating its provisions, it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility in any way." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 947 (9th Cir. 2011). Rather, the barrier need only interfere with the plaintiff's "full and equal enjoyment" of the facility. 42 U.S.C. § 12182(a). The Ninth Circuit has held:

> Once a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III . . . .

Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1042 n.5 (9th Cir. 2008). "[A] 'barrier' will only amount to such interference if it affects the plaintiff's full and equal enjoyment of the facility on account of his particular disability." Chapman, 631 F.3d at 947. Plaintiff alleges that he visited the Store and found that the sales counters were not wheelchair accessible. (See Compl. ¶¶ 10-12.) This allegation is accepted as true by virtue of Defendant's default. These barriers were purportedly the cause of the denial of access to Plaintiff, who uses a wheelchair for mobility. (Id. ¶ 1.) Finally, an award of statutory damages and an injunction would redress Plaintiff's alleged injuries.

Where a plaintiff seeks injunctive relief, he must also demonstrate a significant possibility of future harm.  See San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1126 (9th Cir. 1996).  "In the ADA context, in determining the likelihood that a plaintiff will return to defendant's facility, courts have examined such factors as (1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant."  Hubbard, 433 F. Supp. 2d at 1162.  Plaintiff alleges that he "will return to the Store to avail himself of its goods…."  (Compl. ¶ 17.)  Plaintiff has therefore established standing to pursue injunctive relief.

### ii.     Plaintiff's Disabled Status

The ADA defines disability as "[a] physical or mental impairment that substantially limits one or more major life activities ... [,] a record of such an impairment[,] or being regarded as having such an impairment."  42 U.S.C. § 12102(1).  Major life activities as defined by the ADA include walking and standing.  Id. § 12102(2).  Plaintiff alleges that he "is substantially limited in his ability to walk[,]" as he suffers from a C-4 spinal cord injury, is quadriplegic, and uses a wheelchair for mobility.  (Compl. ¶ 1.)  Because this allegation is accepted as true, he has established a physical impairment that substantially limits the major life activities of walking and standing.  Plaintiff is therefore disabled within the meaning of the ADA and has satisfied the first element of his Title III discrimination claim.

### iii.    Place of Public Accommodation

A sales establishment is a place of public accommodation.  Id. § 12181(7)(E).  Plaintiff asserts that the Store is a "a facility open to the public, a place of public accommodation, and a business establishment."  (Compl. ¶ 9.)  Accepting these allegations as true, Plaintiff has established the second element of his ADA claim.

### iv.    Denial of Public Accommodation Due to Architectural Barriers

The next two elements of an ADA architectural barriers claim evaluate whether architectural barriers worked to discriminate against the plaintiff on account of his physical disability.  "Whether [a plaintiff is] denied public accommodations on the basis of disability—is met if there was a violation of applicable accessibility standards."  Moeller v. Taco Bell Corp., 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011); see Chapman v. Pier 1 Imps. (U.S.), Inc., 631 F.3d 939, 945 (9th Cir. 2011) (en banc).  Those standards are set forth by the ADA Accessibility Guidelines ("ADAAG"), which "provide [ ] the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations."  Chapman, 631 F.3d at 945; see 28 C.F.R. pt. 1191 (2010 Standards).

Under the 2010 Standards, any business that provides facilities such as sales or transaction counters must provide accessible sales or transaction counters, a portion of which

must be no higher than 36 inches above the floor and 36 inches in width.  2010 Standards, § 904.4.  Plaintiff alleges that the Store lacked ADA-compliant wheelchair accessible sales counters, and that he was therefore unable to avail himself of the Store's public services.  (Compl. ¶¶ 10-12.)  He therefore alleges a violation of the 2010 Standards.

### v.   Readily Achievable Removal of Public Barriers

Whether removal of a barrier is readily achievable involves consideration of four factors:

> A) the nature and cost of the action needed . . .; B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

Hubbard, 433 F. Supp. 2d at 1168 (citing 42 U.S.C. § 12181(9)).

Plaintiff argues that whether or not removal of these barriers "readily achievable" is an affirmative defense that is waived unless raised, implying that where the Plaintiff establishes an architectural barrier, he is entitled to a presumption that the barrier is readily removable.  (See Appl. at 5.)  In support of that proposition, he cites one case: Wilson v. Haria and Gogri, Corp., 479 F. Supp. 2d 1127 (E.D. Cal. 2007).  However, "the Ninth Circuit has yet to decide who has the burden of proving that removal of an architectural barrier is readily achievable."  Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1010 (C.D. Cal. 2014).

Indeed, the "majority rule" among the district courts in the Ninth Circuit is that "a plaintiff bears the initial burden with respect to 'readily achievable' remediation of architectural barriers."  See Schutza v. RNL Auto., LLC, 2015 WL 5331620, at *3 (S.D. Cal. Sept. 14, 2015) (outlining the intra-circuit split regarding the burden shifting); see also Vogel, 992 F. Supp. 2d at 1010 (C.D. Cal. 2014) (quoting Colorado Cross Disability v. Hermanson Family, Ltd., 264 F.3d 999 (10th Cir. 2001) ("Various district courts throughout the circuit, however, have applied the Tenth Circuit's burden-shifting framework . . . where 'plaintiff bears the initial burden of production to present evidence that a suggested method of barrier removal is readily achievable.'")).

Plaintiff, however, has met this initial burden by alleging that the architectural barriers are readily removable.  (Compl. ¶ 16.)  See, e.g., Johnson v. Hall, 2012 WL 1604715, *3 (E.D. Cal. May 7, 2012) (holding that plaintiff's allegation that architectural barriers "are readily removable" and that he sought injunctive relief to remove all readily achievable barriers"

satisfied his burden). Accordingly, following the Tenth Circuit's burden-shifting rule, Defendant bears the ultimate burden of persuasion that barrier removal is not readily achievable. See Colorado Cross Disability, 264 F.3d at 1002–03. Defendant "has failed to meet his burden because he failed to appear and defend." Vogel, 992 F. Supp. 2d at 1011. Plaintiff has therefore established the fifth and final element of his Title III discrimination claim, stating a cause of action under the ADA.

### b. Unruh Civil Rights Act

The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability, [or] medical condition . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). A violation of the ADA necessarily violates the Unruh Act, Cal. Civ. Code § 51(f), and, although required if not based on an ADA violation, "no showing of intentional discrimination is required where the Unruh Act violation is premised on an ADA violation." Lentini v. Cal. Ctr. for the Arts, Escondido, 370 F.3d 837, 847 (9th Cir. 2004). Because Plaintiff's Complaint alleges a cognizable ADA claim, he has also properly alleged a violation of the Unruh Act.

### 3. Sum of Money at Stake

The fourth Eitel factor examines the amount of money at stake in the action relative to the gravity of the defendant's conduct. PepsiCo, 238 F. Supp. 2d at 1176. Plaintiff seeks a total monetary judgment of $7,163.60. (Appl. at 7.) Plaintiff seeks $4,000 in damages and $3,163.60 in attorneys' fees. (Id.) Unlike the ADA, the Unruh Act permits the recovery of monetary damages, in the form of actual and treble damages or statutory damages of $4,000 per violation. See M.J. Cable, Inc., 481 F.3d at 731 (citing Cal. Civ. Code § 51(a)). Plaintiff's request for damages is therefore commensurate with his statutory rights under the Unruh Act. Thus, the Court finds this factor weighs in favor of granting the Application.

### 4. Possibility of Dispute Concerning Material Facts

Upon entry of default, all well-pleaded factual allegations are deemed true—except those pertaining to damages. TeleVideo, 826 F.2d at 917; Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. Feb. 11, 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). Because Defendant has not appeared in this action or asserted any defenses, it is unlikely that disputes as to material facts will arise. Accordingly, this factor favors default judgment.

### 5. Excusable Neglect

Under the sixth factor, the court must consider whether a defendant's default may have been due to excusable neglect. Eitel, 782 F.2d at 1472. This factor favors default judgment

where the defendant has been properly served or the plaintiff demonstrates the defendant is aware of the action. Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1082 (C.D. Cal. Jan. 23, 2012). In the instant case, Defendant was properly served with the summons and Complaint and was served with the instant Application. (Dkt. No. 9; Gutierrez Decl. ¶ 9.) Accordingly, the Court concludes Defendant's default was not the product of excusable neglect. Thus, this factor favors entry of default judgment.

### 6. Policy Favoring Decision on the Merits

Generally, default judgments are disfavored because "[c]ases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472 (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985)). However, where a defendant fails to appear and respond, default judgment is appropriate. Wecosign, 845 F. Supp. 2d at 1083. Here, Defendant's failure to appear or defend against this action makes a decision on the merits impracticable. Therefore, this factor weighs in favor of default judgment.

On balance, the Eitel factors weighs in favor of default judgment against Defendant. Thus, the Court GRANTS the Application for default judgment.

## C. Requested Relief

Rule 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). A plaintiff must "prove up" the amount of damages. Aifang v. Velocity VIII, L.P., 2016 WL 5420641, at *7 (C.D. Cal. Sept. 26, 2016).

### 1. Monetary Relief

Plaintiff seeks a total monetary judgment of $4,000. The Unruh Act permits the recovery of monetary damages, in the form of actual and treble damages or statutory damages of $4,000 per violation. See M.J. Cable, Inc., 481 F.3d at 731 (citing Cal. Civ. Code § 51(a)). By adequately alleging a violation of Unruh Act, Plaintiff has established that he is entitled to the monetary relief requested.

### 2. Injunctive Relief

Plaintiff also seeks an injunction "to compel[] Defendant to comply with the American with Disabilities Act and the Unruh Civil Rights Act" by providing wheelchair accessible sales counters.[1] (Appl. at 2.) To be entitled to injunctive relief under 42 U.S.C. § 12188(a)(2), Plaintiff must show that Defendant has violated the ADAAG. "In the case of violations [of the accessibility provisions] of this title, injunctive relief shall include an order to alter facilities to

---

[1] Plaintiff notes that he is not seeking injunctive relief under Section 55 of the California Civil Code. (Appl. at 2.)

make such facilities readily accessible to and usable by individuals with disabilities. . . ." Id.; see Moeller v. Taco Bell, 816 F.Supp.2d 831, 859 (N.D. Cal. 2011).

In an application for default judgment, "[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977). Some district courts have similarly required a party to submit evidence to support requests for non-monetary forms of relief requested on default, including requests for permanent injunctions. See, e.g., Oakley, Inc. v. Moda Collection, LLC, 2016 WL 7495837, at *1 (C.D. Cal. Sept. 28, 2016).

Plaintiff provides the declaration of investigator Randall Marquis as evidence of the alleged barriers at the Store. (Marquis Decl.) Marquis attests that he visited the Store, and found that the sales counter was about 44 inches in height, exceeding the 36 inches required by ADA standards, and it did lowered portion for use by persons in wheelchairs. (Id. ¶ 3.) Plaintiff also proffers photographs of the non-compliant counter, taken by Marquis. (Id. ¶ 4; Ex. 4 (photographs).) Plaintiff also submits a declaration attesting that he personally visited the Store, and found that the sales counter was about 44 inches in height. (Whitaker Decl. ¶ 4.) He further attests that the photographs presented as Exhibit 4 accurately depict the barrier he faced at the Store. (Id. ¶ 4.) The Court finds that this evidence is sufficient to establish the existence of the alleged barrier.

3. **Attorneys' Fees and Costs**

Local Rule 55-3 provides a schedule for attorneys' fees in default judgment actions when an applicable statute allows for recovery of reasonable attorneys' fees. L.R. 55-3. Plaintiff is entitled to reasonable attorneys' fees under 42 U.S.C. § 12205. (Appl. at 10.) Plaintiff is indisputably a "prevailing party," because he has secured an "enforceable judgment[ ] on the merits." Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603–04 (2001). "A prevailing plaintiff under the ADA should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." See Jankey v. Poop Deck, 537 F.3d 1122, 1130 (9th Cir. 2008) (internal quotation marks omitted).

Under L.R. 55-3, when the amount of judgment, exclusive of costs, is between $1,000.00 and $10,000.00, attorneys' fees will be calculated as $300.00 plus 10 percent of the amount over $1,000.00. L.R. 55-3 also provides that an attorney may request fees in excess of the fee schedule by "fil[ing] a written request at the time of entry of the default judgment to have the attorney's fee fixed by the Court." When such a request is filed, "[t]he Court shall . . . render judgment for such fee as the Court may deem reasonable." Id.

Here, the schedule set out in L.R. 55-3 provides for an attorneys' fees award of $600. Plaintiff submitted a request for $2,333.60 in attorney fees, along with supporting documentation. The Court must therefore determine whether that amount is reasonable. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461

U.S. 424, 433 (1983). Once the court has calculated that amount, known as the lodestar, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" Id. at 434.

The moving party has the burden to produce evidence that the rates and hours worked are reasonable. See Intel Corp. v. Terabyte Int'l, 6 F.3d 614, 623 (9th Cir. 1993). "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008) (internal citations omitted). For example, hours may be reduced by the court "where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986).

Plaintiffs seek $2,333.60 in attorney's fees. (Handy Decl., Invoice.) Specifically, Plaintiff's Counsel seeks fees for 6.62 hours of work at the following hourly rates:

| Name | Position | Hourly Rate | Total Hours | Total |
|---|---|---|---|---|
| Mark Potter | Partner | $595 | 1.48 | $880.60 |
| Amanda Seabock | Partner | $450 | 0.08 | $36.00 |
| Faythe Gutierrez | Associate | $400 | 2.48 | $992.00 |
| Marcus Handy | Paralegal | $200 | 1.67 | $334.00 |
| Andrew Sheaffer | Paralegal | $100 | 0.48 | $48.00 |
| Pie Callueng | Paralegal | $100 | 0.43 | $43.00 |
| | | Total | 6.62 | $2,333.60 |

(Id.) The Court finds that the hourly rates above are reasonable, and that the lodestar does not include fees for any hours that are excessive, redundant, or otherwise unnecessary. The Court therefore concludes that the lodestar amount of $2,333.60 is reasonable.

Plaintiff also requests reimbursement of $830 in costs. (Handy Decl., Invoice.) Of this amount, $400 is a filing fee, $30 represents fees for service of process, and $400 is for an investigator fee. (Id.) Plaintiff provides the declaration of Randall Marquis, an investigator, who attests that he went to the store, confirmed the facts in Plaintiff's complaint, and took photographs depicting the facilities. (See id., Ex. 3.) The Court finds that the investigation costs were reasonably incurred in the litigation, and that the filing fee and service fee costs are also reasonable.

### IV.   CONCLUSION

Based on the foregoing, Plaintiff's Application for default judgment is GRANTED. The March 29, 2021 hearing is VACATED. Judgment shall be entered as follows:

1. Plaintiff is AWARDED:

      a. $4,000 in monetary damages;
      b. $2,333.60 in attorneys' fees;
      c. $830 in costs.

2. Defendant is ORDERED to provide wheelchair accessible sales counters in compliance with the ADA Accessibility Guidelines at the Store located at 7802 Kew Avenue, Rancho Cucamonga, California.

3. Plaintiff is ORDERED to mail a copy of this order and the judgment concurrently filed therewith to Defendant. Plaintiff shall file a Proof of Service with the Court within ten days of the date of this Order.

**IT IS SO ORDERED.**